Carney R. Shegerian, State Bar No. 150461
CShegerian@Shegerianlaw.com
Anthony Nguyen, State Bar No. 259154
ANguyen@Shegerianlaw.com
Cheryl A. Kenner, State Bar No. 305758
CKenner@Shegerianlaw.com
**SHEGERIAN & ASSOCIATES, INC.**
11520 San Vicente Boulevard
Los Angeles, California 90049
Telephone Number:  (310) 860-0770
Facsimile Number:  (310) 860-0771

Attorneys for Plaintiff ALISON WHITE,
individually, and for all others similarly
situated

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| ALISON WHITE, an individual, on behalf of herself and all others similarly situated,<br><br>         Plaintiff,<br><br>   v.<br><br>RING LLC, a Delaware Limited Liability Company; THE HOME DEPOT, INC. dba HOME DEPOT U.S.A., INC., a Delaware Corporation; AMAZON.COM SERVICES LLC dba AMAZON.COM, INC., a Delaware Corporation; DOES 1 through 100, inclusive,<br><br>         Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF:**<br><br>(1)  CONSUMER LEGAL REMEDIES ACT, Cal. Civ. Code §§ 1750, *et seq.*;<br>(2)  FALSE ADVERTISING LAW, Cal. Bus. & Prof. Code §§ 17500, *et seq.*;<br>(3)  UNFAIR COMPETITION LAW, Bus. & Prof. Code §§ 17200, *et seq.*;<br>(4)  NEGLIGENT MISREPRESENTATION;<br>(5)  INTENTIONAL MISREPRESENTATION; and<br>(6)  BREACH OF EXPRESS WARRANTY, Cal. Comm. Code §§ 2313, *et seq.*<br><br>**DEMAND FOR JURY TRIAL** |

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ....................................................................................... 1

II.  NATURE OF THE ACTION ....................................................................... 1

III. JURISDICTION AND VENUE .................................................................... 6

IV.  PARTIES .................................................................................................... 7

V.   FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION ...................................................................................................... 9

VI.  CLASS ACTION ALLEGATIONS ............................................................ 13

VII. FIRST CAUSE OF ACTION ..................................................................... 17

Violations of the California Consumers Legal Remedies Act Cal. Civ. Code §§ 1750, et seq. (On Behalf of the California Subclass) ................. 17

VIII. SECOND CAUSE OF ACTION ................................................................ 20

Violations of California's False Advertising Law ("FAL") Bus. & Prof. Code §§ 17500, et seq. (On Behalf of the California Subclass) ............... 20

IX.  THIRD CAUSE OF ACTION .................................................................... 22

Violations of California's Unfair Competition Law ("UCL") Bus. & Prof. Code §§ 17200, et seq. (On Behalf of the California Subclass) ............... 22

"Unlawful" Prong ..................................................................... 23

"Unfair" Prong ......................................................................... 24

"Fraudulent" Prong .................................................................. 25

"Unfair, Deceptive, Untrue or Misleading Advertising" Prong ......... 25

X.   FOURTH CAUSE OF ACTION ................................................................ 26

Negligent Misrepresentation (On Behalf of the National Class and the California Subclass) ................................................................................. 26

XI.  FIFTH CAUSE OF ACTION .................................................................... 27

Intentional Misrepresentation (On Behalf of the National Class and the California Subclass) ................................................................................. 27

XII. SIXTH CAUSE OF ACTION .................................................................... 29

Breach of Express Warranty Cal. Com. Code §§ 2313, et seq. (On Behalf of the National Class and the California Subclass) .................................... 29

PRAYER FOR RELIEF .................................................................................... 31

DEMAND FOR JURY TRIAL ........................................................................ 34

CLASS ACTION COMPLAINT

## I.    INTRODUCTION

1.    Plaintiff ALISON WHITE ("Plaintiff" or "Ms. White"), individually, and on behalf of all others similarly situated, brings this consumer Class Action Complaint against Defendants RING LLC ("Ring"); THE HOME DEPOT, INC. doing business as HOME DEPOT U.S.A., INC. ("Home Depot"); and AMAZON.COM SERVICES LLC doing business as AMAZON.COM, INC. ("Amazon"), and Does 1 through 100 inclusive, collectively, "Defendants," for unlawful, unfair, and deceptive business practices in violation of (1) California's Consumer Legal Remedies Act, California Civil Code sections 1750, *et seq.*; (2) California's False Advertising Law, California Business and Professions Code sections 17500, *et seq.*; (3) California's Unfair Competition Law, California Business and Professions Code sections 17200, *et seq.*; (4) Negligent Misrepresentation; (5) Intentional Misrepresentation; and (6) Breach of Express Warranty, California Commercial Code sections 2313, *et seq.* in response to Defendants' false and misleading promotion of its security products known as the Jobsite Security 5-Piece Starter Kit and Ring Protect Pro subscription.

2.    Defendants' packaging, website, advertisements, and marketing materials associated with Defendant Ring's Jobsite Security 5-Piece Starter Kit represents to consumers that Jobsite Security Kit, when used in conjunction with a Wi-Fi internet connection and a Pro Subscription with enrollment in "24/7 professional monitoring," Defendant Ring will automatically "handle it" and "call the authorities and resolve it for you," when in fact, the Jobsite Security Kit and Pro Subscription are not capable of this advertised functionality.    Users must call authorities themselves or instruct Defendant Ring to do so when the users are prompted.    Defendants effectively sold purchasers a "911 speed dial" button purchasers can press when purchasers see that their motion sensors have been triggered.

## II.    NATURE OF THE ACTION

3.    Defendants Ring and Amazon manufacture, distribute, market, and sell the Jobsite Security 5-Piece Starter Kit ("Jobsite Security Kit") to be used in

1  conjunction with Defendant Ring's Ring Protect Pro subscription ("Pro
2  Subscription").

3    4.    Defendant Home Depot has partnered with Defendants Ring and Amazon
4  to distribute, market, and sell this Jobsite Security Kit. The Jobsite Security Kit is
5  available for purchase exclusively at Defendant Home Depot's retail stores nationwide
6  and via Defendant Home Depot's website www.homedepot.com.[1]

7    5.    Since its release to customers in or around October 2021, the price for the
8  Jobsite Security Kit has been $399.99, which includes an Alarm Pro Base Station,
9  Stick Up Cam Battery, Motion Sensor, Spotlight Battery, and a Powered Case.

10    6.    Defendant Ring advertises the Jobsite Security Kit on its website as "a
11  flexible security system for contractors that adds wifi to your site. Easily move the
12  devices around. Take the system to different sites. And protect your valuable tools and
13  materials from anywhere, anytime.[2]

14    7.    Defendant Ring's website markets the Jobsite Security Kit as a device
15  that allows you to "be on the job when you can't be," and to "[c]onnect to Ring security
16  cameras, lights, and motion sensors to create an always-on security system, and
17  control it all from the Ring App." [3]

18    8.    Defendant Ring offers the Pro Subscription, which is a no-contract
19  subscription service available for use with the Jobsite Security Kit that permits
20  subscribers to "[g]et notifications, see what's happening in real-time, remotely activate
21  your lights or security siren, and control all your Ring devices from one simple

---

[1] Purported affiliate Venue.com holds itself out as an authorized seller of the Jobsite Security Kit. (The Jobsite Security Kit "is authorized for sale under an affiliate agreement with Home Depot and shipped by Home Depot.")
https://venue.com/product/jobsite-security-5-piece-starter-kit/?utm_source=Google-Shopping&utm_medium=WP-cpc&utm_campaign=2022-WP-VENUE-2022&utm_source=google-ads&utm_campaign=utm%20smartshoppinggoogle&utm_agid=138281687430&utm_term=&creative=587433261022&device=c&placement=&gclid=EAIaIQobChMI743n48Ld9gIVBR6tBh3X-ARSEAYYAiABEgKnkfD_BwE (last accessed March 23, 2022).
[2] https://ring.com/jobsite-security (last accessed March 24, 2022).
[3] https://ring.com/jobsite-security (last accessed March 24, 2022).

dashboard in the Ring App." [4]    Defendant Ring markets the subscription as "a comprehensive subscription service that lets you review, share, and save every video and photo captured by your Ring device and opt-in to 24/7 professional monitoring."[5] In reference to "24/7 professional monitoring," Defendant Ring provides that "Ring Alarm Pro and Ring Alarm professional monitoring service is available only within the U.S. (all 50 states, but not U.S. territories).  Ring does not own its own professional monitoring center.  Additional charges may apply in areas that require permits or guard response service for alarm verification.  Tax not included.  Enrollment required."[6]

9.    The current price for the Pro Subscription is $20 per month if purchased on a monthly basis or $200 per year with an annual purchase.

10.    The packaging of the Jobsite Security Kit also advertises that, when used in conjunction with a Wi-Fi internet connection and a Pro Subscription with enrollment in "24/7 professional monitoring," Defendant Ring will "handle it" and "call the authorities and resolve it for you.[2]" Footnote 2 states in pertinent part, "Ring Alarm Pro and Ring Alarm professional monitoring service is available within the U.S. (all 50 states, but not U.S. territories). Ring does not own its own professional monitoring center.  Additional charges may apply in areas that require permits or guard response service for alarm verification.  Tax not included. Enrollment for Ring Protect Pro and opt-in for professional monitoring is required (each separately)." [7]

---

[4] https://ring.com/protect-plans?utm_source=google&utm_medium=cpc&utm_campaign=833107590&utm_term=ring%20doorbell%20subscription%20plans&utm_content=66897173502&gclid=EAIaIQobChMInsLXpb3d9gIVmxitBh0t_QvmEAAYAiAAEgJTI_D_BwE&gclid=EAIaIQobChMInsLXpb3d9gIVmxitBh0t_QvmEAAYAiAAEgJTI_D_BwE (last accessed March 23, 2022).

[5] https://ring.com/protect-plans?utm_source=google&utm_medium=cpc&utm_campaign=833107590&utm_term=ring%20doorbell%20subscription%20plans&utm_content=66897173502&gclid=EAIaIQobChMInsLXpb3d9gIVmxitBh0t_QvmEAAYAiAAEgJTI_D_BwE&gclid=EAIaIQobChMInsLXpb3d9gIVmxitBh0t_QvmEAAYAiAAEgJTI_D_BwE (last accessed March 23, 2022).

[6] *Id*.

[7] https://ring.com/jobsite-security (last accessed March 24, 2022).

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### We'll Handle It

If there's an issue, we'll call authorities and resolve it for you when you enroll in 24/7 professional monitoring.[2]

11.     Defendant Ring advertises and misrepresents on its website that its Pro Subscription provides functionality that it knows it does not actually provide. Defendants are intentionally misrepresenting that the Jobsite Security Kit, when used with the Pro Subscription, will "call authorities" for users who have a triggering security event, when it knows that its Jobsite Security Kit does not actually contain any pieces that trigger police response.

12.     Defendant Home Depot's websites states, "The Jobsite Security 5-Piece Starter Kit is a complete security system for contractors that connects to existing wifi or can create a mobile hotspot, generating a wifi network that has a 24/7 LTE internet connection (requires a Ring Protect Pro subscription).[1]  Connect the Stick Up Cam Battery, Spotlight Battery, and Motion Sensor to the Alarm Pro Base Station to create an always-on security system that will protect your job site and valuable tools, and control it all from the Ring App.  Easily move the devices around the job site or take the entire system to safeguard different sites."  The foregoing footnote 1 states, "Extra data charges may apply. Backup cellular data is provided by a third party carrier, and availability and speeds will vary. May require backup power if the power goes out. Visit ring.com/alarm-pro for more details.  Ring Alarm Pro is designed to be used as a router, as using Ring Alarm Pro as an extender may impact your ability to utilize Ring Protect Pro features."

13.     Defendants' advertising and marketing campaign is false, deceptive, and misleading because the Pro Subscription when used in conjunction with the Jobsite Security Kit does not actually automatically call authorities when the alarm is set and then the Motion Sensor is triggered and all other conditions precedent are satisfied.

14.     Defendants' strategy to misrepresent the functionality and service of automatically contacting the police is not accidental. Defendants' goal is to entice purchasers and subscribers of the Jobsite Security Kit and Pro Subscription into purchasing the equipment and subscription with the peace of mind that they will have an alarm system that contacts the police when the user is not at the jobsite. Theft from construction sites is a major problem of which Defendants are aware as Defendant Ring notes on its website, "Up to $1 billion a year is lost nationwide due to theft on job sites," citing the 2015 Theft Report by the National Crime Information Bureau (NCIB).[8] and Defendants' Jobsite Security Kit and Pro Subscription are designed to combat by acting as a deterrent.

15.     When deciding to purchase the Jobsite Security Kit and Pro Subscription, Plaintiff and those similarly situated ("Class Members") relied on Defendants' misrepresentation that their Jobsite Security Kit when used with the Pro Subscription would automatically contact authorities. Plaintiff and Class Members would not have purchased the Jobsite Security Kit and Pro Subscription absent Defendants' misrepresentation regarding the capability and functionality of the Jobsite Security Kit and Pro Subscription.

16.     Consequently, several of Defendants' advertised claims are false and misleading.

17.     Plaintiff makes these allegations as follows upon personal knowledge as to Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigations conducted by Plaintiff's attorneys.

---

[8] https://ring.com/jobsite-security (last accessed March 24, 2022).

18.     Defendants' nationwide sale and advertising of deceptively misbranded products constitutes: (1) violations of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; (2) violations of California's False Advertising Law ("FAL"), Bus. & Prof. Code §§ 17500, *et seq.*; (3) violations of California's Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*; (4) violations of consumer protection statutes of various other states; (5) negligent misrepresentation; (6) intentional misrepresentation; and (7) breach of express warranty, California Commercial Code §§ 2313, *et. seq.*

19.     This conduct caused Plaintiff and others similarly situated damages and requires restitution and injunctive relief to remedy and prevent further harm.

20.     Unless otherwise indicated, the use of Defendants' name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers of the named Defendants.

### III.     JURISDICTION AND VENUE

21.     This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), pursuant to 28 U.S.C. section 1332(d)(2), which confers original jurisdiction on federal courts over a class action with at least 100 putative class members, minimal diversity in which any member of the putative class is a citizen of a state different from any defendant, and in which the amount in controversy exceeds in the aggregate sum of $5,000,000.00, exclusive of interest and costs.

22.     Plaintiff alleges that there are at least 100 putative class members who purchased a Jobsite Security Kit and a corresponding Pro Subscription.

23.     Plaintiff alleges that the amount in controversy exceeds $5,000,000.00, pursuant 28 U.S.C. § 1332(d)(2) and (6).

24.     Plaintiff alleges that minimal diversity exists with members of the proposed class who are citizens of different states than Defendants Ring, Home Depot,

1    and Amazon.

2        25.    This Court has personal jurisdiction over Ring because Ring maintains

3    headquarters in this District and operates in this District.   Through its business

4    operations in this District, Ring intentionally avails itself of the markets within this

5    District to render the exercise of jurisdiction by this Court just and proper.  This Court

6    has personal jurisdiction over Home Depot because Home Depot operates multiple

7    retail stores in this District and through its business operations in this District, Home

8    Depot intentionally avails itself of the markets within this District to render the

9    exercise of jurisdiction by this Court just and proper.   This Court has personal

10   jurisdiction over Amazon because Amazon operates multiple retail stores in this

11   District and through its business operations in this District, Amazon intentionally

12   avails itself of the markets within this District to render the exercise of jurisdiction by

13   this Court just and proper.  Additionally, as to all three Defendants—Ring, Home

14   Depot, and Amazon—they sell their products to consumers who reside in this District

15   through e-commerce channels.

16       26.    Venue within this District is proper because Defendant Ring is

17   headquartered at 1523 26th Street Santa Monica, CA 90404 within this district, and

18   Defendants Ring, Home Depot, and Amazon intentionally avail themselves of the

19   markets within this District to render the exercise of jurisdiction by this Court just and

20   proper, and the acts complained of occurred within this District.

21   **IV.   PARTIES**

22       27.    Plaintiff Alison White ("Ms. White"), is, and at all times relevant hereto

23   was, an individual residing in Los Angeles County, California.  Ms. White purchased

24   and used Defendants' Jobsite Security Kit and Pro Subscription in Los Angeles

25   County, California.

26       28.    Defendant RING LLC ("Ring") is a limited liability company organized

27   under the laws of Delaware with its headquarters located at 1523 26th Street, Santa

28   Monica, California 90404.  Defendant Ring is a home security and smart home

company that designed and manufactured the Jobsite Security Kit and designed and provides the Pro Subscription. Defendant Ring created and/or authorized the false, misleading, and deceptive advertisements and packaging of the Jobsite Security Kit and Pro Subscription. Defendant Ring, directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the State of California and is headquartered in the State of California. Defendant Ring's parent company is Defendant Amazon.

29.     Defendant AMAZON.COM SERVICES LLC doing business as AMAZON.COM, INC. ("Amazon") is a corporation organized under the laws of Delaware with its headquarters located at 410 Terry Avenue North, Seattle, Washington 98109.  Defendant Amazon is the parent company of Defendant Ring.[9] Defendant Amazon created and/or authorized the false, misleading, and deceptive advertisements and packaging of the Jobsite Security Kit and Pro Subscription. Defendant Amazon, directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the State of California.

30.     Defendant THE HOME DEPOT, INC. ("Home Depot") is a corporation organized under the laws of Delaware with its headquarters located at 2455 Paces Perry Road, Atlanta, Georgia 30339. Defendant is a large-scale home improvement retailer with almost 2,000 store locations and also sells its products online for shipment direct-to-customer or pickup in-store.  Defendant Home Depot created and/or authorized the false, misleading, and deceptive advertisements and packaging of the Jobsite Security Kit, including representations about the Pro Subscription.  Defendant Home Depot, directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the State of California.

---

[9] https://press.aboutamazon.com/news-releases/news-release-details/amazon-and-ring-close-acquisition-now-working-together-empower (last accessed March 30, 2022).

## V.    FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

31.    Plaintiff realleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

32.    At all relevant times, Defendants have been, and continue to be, a "person" as that term is defined under California Business & Professions Code Section 17021.

33.    In or around April 2018, Defendant Amazon acquired Defendant Ring.[10]

34.    On or about December 20, 2021, Ms. White purchased Defendant Ring's Jobsite Security Kit from Defendant Home Depot's website for in-store pickup for a total price of $399.99 plus tax of $41.00 ($440.99 in total).[11]  On December 21, 2021 at 10:31 AM, Ms. White received email confirmation from Defendant Home Depot confirming that she picked up her Jobsite Security Kit from Defendant Home Depot's Signal Hill store.

35.    On or about December 23, 2021, Ms. White subscribed to the Pro Subscription via Defendant Ring's website and then received an email confirmation of her active subscription on December 24, 2021 at 1:29:09 AM PST.  On or about December 23, 2021, Ms. White also activated the eero subscription that accompanied the Ring Alarm Pro in her Jobsite Security Kit.

36.    On or about December 24, 2021 between approximately 3:00 and 4:00 p.m. PST, Ms. White installed the Jobsite Security Kit for her personal use at her residential jobsite located at 5981 West 74th Street, Los Angeles, California 90045 (the "Residence").

---

[10] https://press.aboutamazon.com/news-releases/news-release-details/amazon-and-ring-close-acquisition-now-working-together-empower (last accessed March 30, 2022).
[11] Prior to discovering that the Jobsite Security Kit and Pro Subscription do not automatically contact authorities, Ms. White purchased and installed two additional Jobsite Security Kits and established Pro Subscriptions for those units for personal use at other jobsite locations in Los Angeles at the same prices set forth above.

37.     On December 24, 2021 at approximately 3:22 p.m. PST, Ms. White caused permits from the City of Los Angeles to be obtained for the Residence for $43.

38.     On or about December 24, 2021 at 3:00 p.m. PST, Ms. White activated the Monitoring settings in her Ring smartphone application to "customize how Police Response is requested for an alarm at [her] location," by requesting police response for "SOS, panic alarms, and burglar alarms triggered by door, window, or motion sensors when Ring Alarm is armed."  Ms. White chose the default option for Ring Monitoring to "request a police response if no one cancels the request for help."

39.     On or about December 24, 2021, Ms. White set up and then tested the Jobsite Security Kit with the Pro Subscription on the Ring mobile phone application and confirmed that it was operational.  To test functionality, Ms. White tested the security cameras to ensure they were recording motion, and tested the motion sensor by walking in front of it to make sure that it properly identified motion.

40.     On or about December 24, 2021 at 7:54 p.m. PST, Ms. White set the alarm to the "away" setting on her Ring mobile phone application to enable automatic police response in the event the Ring alarm was triggered while she was away.

41.     On or about December 25, 2021 at 2:52 AM PST, 25 hours after confirmation that Ms. White's Pro Subscription was active, and 7 hours after arming the Ring alarm to "away," someone broke into the Residence, repeatedly triggering the motion sensor.  The Ring cameras  recorded the break-in and the Ring app sent repeated motion alerts to Ms. White's phone, but Ring did not contact the police in any fashion.

42.     Ms. White expected in this instance, while she was sleeping, that the triggered Ring Jobsite Security Kit would automatically contact the police to respond to the Residence because her Ring alarm system was set to "away," she had obtained the necessary alarm permit, and she had enrolled in, and paid for, Ring's Pro Subscription with professional monitoring, which promised that Ring would contact authorities for her if there was a triggering event.

43.     In purchasing the Jobsite Security Kit and obtaining an eero subscription and a Pro Subscription, Ms. White reasonably relied on Defendants' advertising and marketing representations that with the Pro Subscription, the Jobsite Security Kit would provide "24/7 professional monitoring" that would automatically "contact authorities" in the event the alarm was armed and there was an issue.

44.     Defendants seek to capture purchasers who desire a portable security system to secure their jobsites while they are not on-site by specifically advertising their "24/7 professional monitoring" service.  To do so, Defendants have deceptively advertised the Jobsite Security Kit and Pro Subscription as a "professional monitoring" service that "contact[s] authorities and resolve[s] it for you" instead of representing that its Jobsite Security Kit, when used with the Pro Subscription, doesn't actually automatically contact authorities.  Rather the device with the subscription simply alerts users at the time the motion sensor has been triggered, letting the *user* who sees the alert decide in the moment whether the user would like to contact the authorities.

45.     At the time Plaintiff purchased Defendants' Jobsite Security Kit and Pro Subscription and established an eero subscription, Plaintiff believed and relied upon Defendants' representation that the Jobsite Security Kit with the Pro Subscription would automatically contact authorities if triggered while the alarm was set.  Plaintiff did not believe she was effectively purchasing a sort of "speed-dial button" that would require her to "be on-call" and then call 911 herself through the Ring smartphone application, which is what Defendant Ring ultimately provided.

46.     Plaintiff reasonably believed Defendants' marketing materials claiming that "We'll Handle It" and "If there's an issue, we'll call authorities and resolve it for you when you enroll in 24/7 professional monitoring," and purchased the Jobsite Security Kit for that reason, believing that if she were "away" when the motion sensor was triggered, then Defendant Ring would automatically call authorities for her, even when she wasn't in a position to respond to the phone alerts.

47.    Defendants knew, or in the exercise of reasonable care, should have known that their Jobsite Security Kit with the Pro Subscription were not capable of automatically contacting authorities and thus that its advertising materials were misleading or false.

48.    As a consequence of Defendants' unfair and deceptive advertising and manufacturing practices, Plaintiff and other consumers similarly situated purchased and overpaid for Defendants' Jobsite Security Kit and Pro Subscription under the false impression that the Pro Subscription would automatically contact authorities when all conditions precedent were satisfied.

49.    Plaintiff and other consumers similarly situated purchased and overpaid for Defendants' Jobsite Security Kit, eero subscription, and Pro Subscription due to Defendants' misrepresentations.

50.    Had Plaintiff had been aware that the Jobsite Security Kit with internet and the Pro Subscription alone were in fact not capable of automatically contacting authorities, Plaintiff would not have purchased these three kits, or would have paid less for them.

51.    Plaintiff and others similarly situated were exposed to and relied upon the same material misrepresentations made on Defendants' packaging, website, advertisements, and marketing materials.

52.    As a result of Defendants' false and misleading statements, Plaintiff and other similarly situated consumers purchased thousands, if not tens of thousands, of Defendants' Jobsite Security Kit, eero subscription, and Pro Subscription and have suffered, and continue to suffer, injury in fact through the loss of money and/or property.

53.    This action seeks, among other things, public injunctive relief, restitution of all amounts illegally obtained, and disgorgement of any and all ill-gotten gains as a result of the misconduct alleged herein.

CLASS ACTION COMPLAINT

# VI.    CLASS ACTION ALLEGATIONS

54.    Plaintiff realleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

55.    Plaintiff brings this action individually and on behalf of all others similarly situated against Defendants under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of a proposed class and subclass defined as follows:

> **The National Class**:  All persons within the United States (all 50 states, but not U.S. territories) who purchased both a Ring Jobsite Security 5-Piece Starter Kit and a Ring Protect Pro Subscription within the four years prior to the filing of the Complaint.

> **The California Subclass**:  All persons within the State of California who purchased both a Ring Jobsite Security 5-Piece Starter Kit and a Ring Protect Pro Subscription within the four years prior to the filing of the Complaint.

56.    Unless otherwise stated, the term "Class" throughout this Complaint refers to the National Class and the California Subclass.

57.    Unless otherwise stated, the term "Class Members" throughout this Complaint refers to members of the National Class and the California Subclass.

58.    Excluded from the Class are (1) Defendants, any entity in which Defendants have a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) anyone who purchased Defendants' Jobsite Security Kit for the purpose of resale; (3) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (4) Class Counsel.

59.    Plaintiff reserves the right to modify or amend the Class definition before the Court determines whether certification is appropriate.

60.    The "Class Period" means four years prior to the filing of the Complaint in this action.

61.    **Ascertainability**.  The members of the Class are readily ascertainable from Defendants' records and/or Defendants' agent's records of retail and online sales

of the Jobsite Security Kit and records of subscribers of the Pro Subscription, as well as through public notice.

62. **Numerosity**. Per Rule 23(a)(1), the members of the Class are so numerous that their individual joinder is impracticable. Plaintiff is informed and believes that the Jobsite Security Kit and Pro Subscription are often-bought products with more than 50 reviews on Amazon.com, and on that basis, Plaintiff alleges that the putative Class consists of hundreds, if not thousands of members.

63. **Acted or Refused to Act on Grounds Generally Applicable to the Class**. Consistent with Rule 23(b)(2), Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and Class members, making appropriate final injunctive relief and declaratory relief regarding the Class.

64. **Existence and Predominance of Common Questions of Law and Fact**. Per Rule 23(b)(3), common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class Members. All members of the Class have been subject to the same conduct and their claims are based on the same standardized marketing, advertisements, and promotions. The common legal and factual questions include, but are not limited to, the following:

    a. Whether the Jobsite Security Kit as manufactured and used with the Pro Subscription is capable of automatically contacting the authorities when the Motion Sensor is triggered while the alarm is armed;

    b. Whether Defendants' claims and representations, as alleged herein, are untrue, misleading, and/or reasonably likely to deceive the average consumer;

    c. Whether Defendants' conduct violates California Civil Code §§ 1750, *et seq.*;

    d. Whether Defendants' advertising is false, untrue, or misleading within the meaning of California Business & Professions Code §§ 17500, *et seq.*;

e.  Whether Defendants' conduct is an unfair, fraudulent, or unlawful act or practice within the meaning of California Business & Professions Code §§ 17200, *et seq*.;

f.  Whether Defendants' advertising is unfair, deceptive, untrue or misleading within the meaning of California Business & Professions Code §§ 17200, *et seq*.;

g.  Whether Defendants acted negligently or intentionally in making the misrepresentations contained on Defendants' packaging;

h.  Whether Defendants acted negligently or intentionally in making the misrepresentations contained on Defendants' website;

i.  Whether Defendants, through their conduct, received money that, in equity and good conscience, belongs to Plaintiff and members of the Class;

j.  Whether Plaintiff and the putative Class Members are entitled to equitable relief, including but not limited to restitution and/or disgorgement of ill-gotten gains; and

k.  Whether Plaintiff and the putative Class members are entitled to injunctive relief as sought herein.

65.  **Typicality**.  Per Rule 23(a)(3), Plaintiff's claims are typical of the claims of the members of the Class in that Plaintiff is a member of the Class that Plaintiff seeks to represent.  Similar to members of the putative Class, Plaintiff purchased the Jobsite Security Kit, eero subscription, and Pro Subscription after exposure to the same material misrepresentations and/or omissions appearing on the Defendants' packaging, and website, advertisements, and marketing materials. Plaintiff is advancing the same, or substantially similar, claims and legal theories on behalf of herself and all absent members of the Class.  Defendants have no defenses unique to Plaintiff.

66. **Adequacy of Representation**. Per Rule 23(a)(4), Plaintiff will fairly and adequately protect the interests of the members of the putative Class. Plaintiff has retained counsel experienced in consumer protection law, including class actions, and specifically, false, and deceptive advertising. Plaintiff has no adverse or antagonistic interest to those in the Class and will fairly and adequately protect the interests of the Class. Plaintiff's attorneys are aware of no interests adverse or antagonistic to those of Plaintiff and proposed Class.

67. **Superiority**. Per Rule 23(b)(3), a class action is superior to all other available means for the fair and efficient adjudication of this controversy. Individualized litigation would create the danger of inconsistent and/or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system. The damages or other financial detriment suffered by individual Class Members may be relatively small compared to the burden and expense that would be entailed by individual litigation of the claims against Defendants. The injury suffered by each individual member of the proposed class is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for members of the proposed Class to individually redress effectively the wrongs to them. Even if the members of the proposed Class could afford such litigation, the court system could not. Individualized litigation of the complex legal and factual issues of such a case increases the delay and expense to all parties, including the court. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Therefore, a class action is maintainable pursuant to Rule 23(b)(3).

68. Unless the Class is certified, Defendants will retain monies received as a result of Defendants' unlawful and deceptive conduct alleged herein. Unless a classwide injunction is issued, Defendants will also likely continue to, or allow its

resellers to, advertise, market, promote, and sell the Class Product in an unlawful and misleading manner, and members of the Class will continue to be misled, harmed, and denied their rights under California law.

## VII.   FIRST CAUSE OF ACTION

**Violations of the California Consumers Legal Remedies Act**
**Cal. Civ. Code §§ 1750, *et seq*.**
**(On Behalf of the California Subclass)**

69.    Plaintiff realleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

70.    As alleged herein, Plaintiff has standing to pursue this claim because Plaintiff has suffered injury-in-fact and has lost money or property as a result of Defendants' unlawful, unfair, and fraudulent actions. Specifically, Plaintiff purchased the Jobsite Security Kit and Pro Subscription for her own personal use.  In doing so, Plaintiff relied upon the false representations that the Jobsite Security Kit and Pro Subscription, when used together with wifi while enrolled in 24/7 professional monitoring and without anything more, would automatically "call authorities and resolve it for [her]," when in fact, it did not automatically call any authorities when an intruder triggered Plaintiff's Motion Sensor while it was armed and Plaintiff was enrolled in 24/7 professional monitoring and had obtained the necessary permit. Plaintiff expended money in the transaction that she otherwise would not have had she known Defendants' advertising claims were false.

71.    California Civil Code Section 1750, *et seq.,* entitled the Consumers Legal Remedies Act (hereinafter "CLRA"), provides a list of "unfair or deceptive" practices in a "transaction" relating to the sale of "goods" or "services" to a "consumer."  The Legislature's intent in promulgating the CLRA is expressed in Civil Code Section 1760, which provides, *inter alia*, that its terms are to be:

> Construed liberally and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.

72.    Defendants are a "person" as defined pursuant to Civil Code Section 1761(c).

73.    Defendants' Jobsite Security Kit constitutes a "good" as defined pursuant to Civil Code Section 1761(a).

74.    Defendants' Pro Subscription constitutes a "service" as defined pursuant to Civil Code Section 1761(b).

75.    Defendants' eero Subscription constitutes a "service" as defined pursuant to Civil Code Section 1761(b).

76.    Plaintiff and the putative Class Members are each a "consumer" as defined pursuant to Civil Code Section 1761(d).

77.    Plaintiff and each of the putative Class Members' purchase of Defendants' products constitutes a "transaction" as defined pursuant to Civil Code Section 1761(e).

78.    Defendants' unfair and deceptive business practices were intended to and did result in the sale of the Jobsite Security Kit, eero subscription, and Pro Subscription.

79.    Civil Code Section 1770(a)(5), (7) and (9) provide that:

> The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:

> (5) [r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have …;

> (7) [r]epresenting that goods or services are of a particular standard, quality, or grade … if they are of another; [and]

> (9) [a]dvertising goods or services with intent not to sell them as advertised."

80.    Defendants violated Civil Code Section 1770(a)(5), (7) and (9) by marketing and representing its products as being capable of automatically contacting authorities when all conditions precedent are satisfied.

81.    On information and belief, Defendants' violations of the CLRA, as set forth herein, were done with awareness of the fact that the conduct alleged was wrongful and was motivated solely by Defendants' self-interest, monetary gain, and increased profits. Plaintiff further alleges that Defendants committed these acts knowing the harm that would result to Plaintiff and Defendants engaged in such unfair and deceptive conduct notwithstanding such knowledge.

82.    Plaintiff suffered an "injury in fact" because Plaintiff's money was taken by Defendants as a result of Defendants' false and misleading representations set forth on the product packaging of Defendants' Jobsite Security Kit and website for the Pro Subscription.

83.    As a direct and proximate result of Defendants' violations of the CLRA, Plaintiff and members of the putative Class are entitled to a declaration that Defendants violated the Consumer Legal Remedies Act.

84.    On information and belief, Defendants' actions were willful, wanton, and fraudulent.

85.    On information and belief, officers, directors, or managing agents of Defendants authorized the use of the misleading statements about the Jobsite Security Kit and Pro Subscription.

86.    Attached hereto as **Exhibit A** is the Declaration of Ms. White pursuant to Cal. Civ. Code § 1780(d).

87.    Plaintiff and the putative Class are also entitled to, and seek, injunctive relief prohibiting such conduct in the future and to recover money damages.

88.    Prior to the filing of this Complaint, Plaintiff, through her counsel, sent a notice and demand letter, pursuant to Cal. Civ. Code § 1782, via certified mail, return receipt requested, to Defendants' respective principal places of business in California, Washington, and Georgia. However, Defendants have not corrected, repaired, replaced, or otherwise rectified the goods or services alleged to be in violation of § 1770, or agreed to do so, within thirty (30) days after receipt of Plaintiff's notice.

89.    Plaintiff, on behalf of herself and other similarly situated consumers, request damages and injunctive relief under the CLRA pursuant to Cal. Civ. Code § 1780, §1781 and § 1782(a).

## VIII.  SECOND CAUSE OF ACTION

**Violations of California's False Advertising Law ("FAL")**
**Bus. & Prof. Code §§ 17500, *et seq*.**
**(On Behalf of the California Subclass)**

90.    Plaintiff realleges and incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

91.    Plaintiff has standing to pursue this claim because Plaintiff has suffered injury-in-fact and has lost money or property as a result of Defendants' unlawful, unfair, and fraudulent actions. Specifically, Plaintiff purchased the Jobsite Security Kit for her own personal use. In doing so, Plaintiff relied upon the false representations that the Jobsite Security Kit and Pro Subscription would automatically call authorities when in fact, it never called authorities and is not capable of doing so.  Plaintiff expended money in the transaction that she otherwise would not have had she known Defendants' advertising claims were false.

92.    Plaintiff and Defendants are both "person[s]" as defined by California Business & Professions Code § 17506.  California Business & Professions Code section 17535 authorizes a private right of action on both an individual and representative basis.

93.    Defendants advertise on their packaging, website, advertisements, and marketing materials that the Jobsite Security Kit and Pro Subscription, when used together, offer a "24/7 professional monitoring" service that will "handle it" and "call the authorities and resolve it for you."

94.    These misrepresentations, acts, and non-disclosures by Defendants constitute false and misleading advertising in violation of Business & Professions Code §§ 17500, *et seq*.

95.    At all times relevant, Defendants' advertising and promotion of their Jobsite Security Kit and Pro Subscription was, and is, untrue, misleading, and likely to deceive the reasonable consumer and the public.  In fact, Defendants did deceive Plaintiff and the putative Class Members through the above-described representations.

96.    Defendants engaged in the false and/or misleading advertising and marketing their Jobsite Security Kit and Pro Subscription in the online marketplace (both Defendant Ring and Home Depot's respective websites), as alleged herein, with the intent to directly or indirectly induce consumers to purchase its Jobsite Security Kit and Pro Subscription, which Defendants knew, or had reason to know, did not have the properties that Defendants claimed.

97.    Because Defendants knew or should have known that the representations and/or omissions alleged herein were untrue or misleading, Defendants acted in violation of California Business & Professions Code §§ 17500, *et seq.*

98.    Defendants are aware, or by the exercise of reasonable care should have been aware, that the representations were untrue or misleading.

99.    Had Defendants truthfully advertised that their Jobsite Security Kit and Pro Subscription were not able to contact authorities without prompting users to place the calls themselves, Plaintiff and the putative Class Members would not have purchased Defendants' Jobsite Security Kit, eero subscription, and Pro Subscription, or would have paid Defendants less.

100.    This false and misleading advertising by Defendants presents a continuing threat to consumers, as Defendants still misrepresent the capability of Jobsite Security Kit, eero subscription, and Pro Subscription.

101.    As a direct and proximate result of the aforementioned acts and omissions by Defendants, Defendants received and continue to hold monies rightfully belonging to Plaintiff and the putative Class Members, who were led to purchase Defendants' products during the Class Period.

102.   Plaintiff and the members of the Class seek an order awarding Plaintiff and other members of the Class restitution of the money wrongfully acquired by Defendants by means of responsibility attached to Defendants' failure to disclose the existence and significance of said misrepresentations.

## IX.   THIRD CAUSE OF ACTION

**Violations of California's Unfair Competition Law ("UCL")**
**Bus. & Prof. Code §§ 17200, *et seq*.**
**(On Behalf of the California Subclass)**

103.   Plaintiff realleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

104.   Plaintiff has standing to pursue this claim because Plaintiff has suffered injury-in-fact and have lost money or property as a result of Defendants' unlawful, unfair, and fraudulent actions.  Specifically, Plaintiff purchased the Jobsite Security Kit, eero subscription, and Pro Subscription for her own personal use.  In doing so, Plaintiff relied upon the false representations that the Jobsite Security Kit with internet and Pro Subscription would "handle it" and automatically contact authorities, when in fact, the Jobsite Security Kit and Pro Subscription weren't capable of doing so. Plaintiff expended money in the transaction that she otherwise would not have had she known Defendants' advertising claims were false.

105.   Plaintiff and Defendants are each a "person" as defined by California Business & Professions Code section 17201. California Business & Professions Code section 17204 authorizes a private right of action on both an individual and representative basis.

106.   "Unfair competition" is defined by Business and Professions Code section 17200 as encompassing several types of business "wrongs," including: (1) an "unlawful" business act or practice, (2) an "unfair" business act or practice, (3) a "fraudulent" business act or practice, and (4) "unfair, deceptive, untrue or misleading

advertising." The definitions in section 17200 are drafted in the disjunctive, meaning that each of these "wrongs" operates independently from the others.

107. By and through Defendants' conduct alleged in further detail above and herein, Defendants engaged in conduct which constitutes unlawful, unfair, and/or fraudulent business practices, and unfair, deceptive, untrue or misleading advertising, as prohibited by California's UCL.

108. An "injunction" is "the primary form of relief available under the UCL to protect consumers from unfair business practices." *In re Tobacco II Cases*, 46 Cal.4th 298, 319 (2009); *see also*, *Clayworth v. Pfizer, Inc.*, 49 Cal.4th 758, 789 (2010) ("[i]f a party has standing under" the UCL, "it may seek injunctive relief").

### *"Unlawful" Prong*

109. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

110. Beginning at a date currently unknown, but estimated as early as October 1, 2021 and continuing to the time of the filing of this Complaint, Defendants have committed acts of unfair competition, including those described above, by engaging in a pattern of "unlawful" business practices, within the meaning of Business & Professions Code sections 17200, *et seq.* by marketing, manufacturing, and distributing Defendant Ring's Jobsite Security Kit and Pro Subscription in violation of California's Consumers Legal Remedies Act, Civil Code section 1750, *et seq.* and California's False Advertising Law, Business & Professions Code sections 17500, *et seq.* as alleged herein.

111. Defendants violated the above-referenced statutes by falsely and misleadingly representing that provides a 24/7 professional monitoring service that will "handle it" by automatically "call[ing] authorities" when all conditions precedent are satisfied, when in reality it does no such thing and is incapable of doing so.

112. By advertising, promoting, manufacturing, and selling its Jobsite Security Kit and Pro Subscription in violation of those California laws, Defendants

1    engaged in a pattern of "unlawful" business practices within the meaning of
2    California's UCL.

3        113.    Plaintiff seeks public injunctive relief to benefit the general public
4    directly by bringing an end to Defendants' unlawful business practices which threaten
5    future injury to the general public.

6                                    *"Unfair" Prong*

7        114.    A business act or practice is "unfair" under the UCL if it offends an
8    established public policy or is immoral, unethical, oppressive, unscrupulous, or
9    substantially injurious to consumers, and that unfairness is determined by weighing
10   the reasons, justifications, and motives of the practice against the gravity of the harm
11   to the alleged victims.

12       115.    Beginning at a date currently unknown and continuing to the time of the
13   filing of this Complaint, Defendants have committed acts of unfair competition as
14   prohibited by Business & Professions Code sections 17200, *et seq*.  Defendants'
15   conduct constitutes an "unfair" business practice because, as alleged, Defendants
16   engaged in a false advertising campaign that misled consumers into believing that
17   upon satisfying all conditions precedent, they were receiving a 24/7 professional
18   monitoring service that would "handle it" and automatically "call authorities."

19       116.    Had Plaintiff and the putative Class Members been informed that
20   Defendants' Jobsite Security Kit, eero subscription, and Pro Subscription wouldn't
21   automatically contact authorities in the event all conditions precedent were satisifed,
22   they would not have purchased the Jobsite Security Kit, eero subscription, and Pro
23   Subscription.  In other words, Defendants earned the business of Plaintiff and the
24   putative Class Members by using deceptive advertising, which placed competitors at
25   a disadvantage.  Furthermore, Plaintiff and the putative Class Members were harmed
26   in that they paid a price premium for the Jobsite Security Kit, eero subscription, and
27   Pro Subscription.

28

117.   Defendants' conduct harms the interests of consumers and market competition. There is no valid justification for Defendants' conduct.

### *"Fraudulent" Prong*

118.   A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

119.   Beginning at a date currently unknown but believed to be in or around October 2021 and continuing to the time of the filing of this Complaint, Defendants engaged in acts of unfair competition, including those described above and herein, in violation of Bus. & Prof. Code §§ 17200, *et seq.,* by engaging in a pattern of "fraudulent" business practices within the meaning of Bus. & Prof. Code §§ 17200, *et seq.,* by falsely and misleadingly advertising its Jobsite Security Kit, eero subscription, and Pro Subscription are a "24/7 professional monitoring" service that "handles it" and "calls authorities" when in reality it just tells user enrollees real-time that a break-in is in progress, leaving them the user in the position to call authorities only if they happen to see the alert.

120.   Plaintiff reserves the right to allege further conduct that constitutes other fraudulent business acts or practices. Such conduct is ongoing and continues to this date.

### *"Unfair, Deceptive, Untrue or Misleading Advertising" Prong*

121.   Defendants' advertising is unfair, deceptive, untrue, and/or misleading within the meaning of Bus. & Prof. Code §§ 17200, *et seq.,* in that consumers are led to believe that Defendants' Jobsite Security Kit, eero subscription, and Pro Subscription are a "24/7 professional monitoring" service that "handles it" and "calls authorities" when in reality it just tells user enrollees real-time that a break-in is in progress, leaving them the user in the position to call authorities only if they happen to see the alert.

122.   Plaintiff and other such reasonable consumers are likely to be, and were, deceived, and misled by Defendants' advertising.

123.   As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent conduct described herein, Defendants received and continue to receive an unfair competitive advantage and unearned commercial benefits at the expense of its competitors and the public, who unwittingly provided money to Defendants based on Defendants' misleading representations.

124.   Plaintiff and the putative Class Members suffered an injury in fact because Plaintiff's monies were taken by Defendants as a result of Defendants' false representations as set forth on Defendants' website, advertisements, packaging, and marketing materials.

125.   Such acts and omissions by Defendants are unlawful and/or unfair and/or fraudulent and constitute multiple violations of California's UCL. Plaintiff reserves the right to identify additional violations by Defendants as may be established through discovery.

126.   In prosecuting this action for the enforcement of important rights affecting the public interest, Plaintiff seeks the recovery of attorneys' fees, which reward is available to a prevailing plaintiff in a class action such as this.

## X.    FOURTH CAUSE OF ACTION

### Negligent Misrepresentation
### (On Behalf of the National Class and the California Subclass)

127.   Plaintiff repeats, realleges, and incorporates by reference the above allegations as if fully stated herein.

128.   Beginning at a date currently unknown but believed to be in or around October 2021 and continuing to the time of the filing of this Complaint, Defendants represented to Plaintiff and others similarly situated that Defendants' Jobsite Security Kit, eero subscription, and Pro Subscription are a "24/7 professional monitoring" service that "handles it" and "calls authorities" when in reality it just tells user enrollees real-time that a break-in is in progress, leaving them the user in the position to call authorities only if they happen to see the alert.

129.   Defendants made these representations knowing, or having reason to know, that they were misrepresenting the functionality or capabilities of the Jobsite Security Kit with the Pro Subscription, because they intentionally marketed the Jobsite Security Kit and Pro Subscription as having the ability to "handle it" and automatically "contact authorities" without users' contribution or engagement.

130.   Defendants acted with the intent to induce the public, including Plaintiff and putative Class Members, to purchase its Jobsite Security Kit, eero subscription, and Pro Subscription knowing that the Jobsite Security Kit, eero subscription, and Pro Subscription was not capable of this functionality.

131.   Plaintiff and the putative Class Members saw, believed, and relied upon Defendants' representations in making the decision to purchase Defendants' Jobsite Security Kit, eero subscription, and Pro Subscription.

132.   At all times relevant, Defendants knew or should have known that such representations were untrue, and Defendants had no reasonable basis for believing the representations to be true.

133.   As a proximate result of Defendants' negligent misrepresentations, during the Class Period Plaintiff and other consumers similarly situated were induced to purchase Defendants' Jobsite Security Kit, eero subscription, and Pro Subscription due to the unlawful acts of Defendants, the damages of which are to be determined at trial.

## XI.    FIFTH CAUSE OF ACTION

### Intentional Misrepresentation
### (On Behalf of the National Class and the California Subclass)

134.   Plaintiff repeats, realleges, and incorporates herein by reference the above allegations as if fully stated herein.

135.   Beginning at a date currently unknown but believed to be in or around October 2021 and continuing to the time of the filing of this Complaint, Defendants intentionally represented to Plaintiff and others similarly situated, through their

1 | packaging, website, advertisements, and marketing materials that their Jobsite
2 | Security Kit, eero subscription, and Pro Subscription were "24/7 professional
3 | monitoring" service that "handles it" and "calls authorities" when in reality it just tells
4 | user enrollees real-time that a break-in is in progress, leaving them the user in the
5 | position to call authorities only if they happen to see the alert.

6 |      136.   Defendants acted intentionally by willfully and purposefully making
7 | representations on their packaging, website, advertisements, and marketing materials,
8 | offering consumers that with the purchase of the Jobsite Security Kit, eero
9 | subscription, and Pro Subscription, they would be buying piece of mind that they will
10 | have an alarm system that contacts the police when the user is not at the jobsite with
11 | "a comprehensive subscription service that" provides "around the clock professional
12 | monitoring[], and more so you'll always be able to protect your job site anytime, from
13 | anywhere."

14 |      137.   Defendants knew or had reason to know such representations were false,
15 | because they designed, manufactured, and marketed the Jobsite Security Kit, eero
16 | subscription, and Pro Subscription and knew what functionalities these items were and
17 | were not capable of when used together.

18 |      138.   Plaintiff and the putative Class Members saw, believed, and relied upon
19 | Defendants' representations in making the decision to buy Defendants' Jobsite
20 | Security Kit, eero subscription, and Pro Subscription.

21 |      139.   As a proximate result of Defendants' intentional misrepresentations,
22 | Plaintiff and the putative Class Members were damaged in an amount to be determined
23 | at trial.

24 |      140.   Plaintiff alleges the "who, what, when, where, and how" of the alleged
25 | deception by Defendants as follows:

26 |         i.   The "who" are Defendants;
27 |        ii.   The "what" is the representation that the Jobsite Security Kit, when
28 |               used with a wifi internet connection and Pro Subscription, would

"handle it" and automatically "call authorities" when the Motion Sensor was triggered while the alarm was set to "away" and the user was enrolled in professional monitoring;

    iii.  The "when" is the date Plaintiff purchased the Jobsite Security Kit, eero subscription, and Pro Subscription, and the Class Period of four years prior to the filing of this Complaint;

    iv.  The "where" is in Defendants' packaging, website, advertisements, and marketing materials, which Plaintiff reproduced above; and

    v.  The "how" is the allegation that Defendants' Jobsite Security Kit, eero subscription, and Pro Subscription were not capable of automatically calling authorities when all conditions precedent were satisfied.

141.  By engaging in the acts described above, Defendants are guilty of malice, oppression, and fraud, and Plaintiff and the putative Class are therefore entitled to recover exemplary or punitive damages.

## XII.  SIXTH CAUSE OF ACTION

### Breach of Express Warranty
### Cal. Com. Code §§ 2313, *et seq.*
### (On Behalf of the National Class and the California Subclass)

142.  Plaintiff repeats and realleges the allegations contained in every preceding paragraph as if fully set forth herein.

143.  Defendants were at all relevant times a "seller" within the meaning of California Commercial Code Section 2103(1)(d).

144.  Defendant Ring's and Defendant Home Depot's Jobsite Security Kit, at all relevant times, was a "good" within the meaning of California Commercial Code Section 2105(1).

145.  Defendant Ring's Pro Subscription, at all relevant times, constitutes a "service" as defined pursuant to Civil Code Section 1761(b).

146.    Defendant Amazon's eero Subscription constitutes a "service" as defined pursuant to Civil Code Section 1761(b).

147.    On the Jobsite Security Kit and Pro Subscription's packaging, website, advertisements, and marketing materials, Defendants expressly warranted to all purchasers that the Jobsite Security Kit and Pro Subscription, when used together with wifi internet and enrollment in "24/7 professional monitoring," Defendant Ring will "handle it" and "call the authorities and resolve it for you" in the event all conditions precedent were satisfied.

148.    Plaintiff and Class Members formed a contract with Defendants at the time they purchased the Jobsite Security Kit and Pro Subscription.  As part of the Jobsite Security Kit and Pro Subscription contracts, Defendants represented that the Jobsite Security Kit and Pro Subscription were capable of "24/7 professional monitoring" that would "contact authorities and resolve it for you" when a qualifying incident arises. This representation constitutes an express warranty and became part of the basis of the bargain between Plaintiff and Class Members.

149.    Defendants made the above-described representations to induce Plaintiff and Class Members to purchase the Jobsite Security Kit, eero subscription, and Pro Subscription and Plaintiff and Class Members relied on the representations in purchasing the Jobsite Security Kit, eero subscription, and Pro Subscription.

150.    Defendants knowingly breached their warranty because the Jobsite Security Kit, eero subscription, and Pro Subscription, when used together without more, were not as advertised—they were incapable of automatically contacting authorities when all conditions precedent were satisfied.

151.    As a result, Plaintiff and the members of the Class are entitled to damages in an amount to be determined at trial.

152.    Within a reasonable time after she knew or should have known of such breach, Plaintiff, on behalf of herself and the other members of the Class, placed Defendants on notice thereof by calling Defendant Ring's customer service number,

contacting Defendant Ring online via Twitter, sending Defendant Ring customer service direct messages on Twitter, and posting a 1-star review on Defendant Home Depot's Jobsite Security Kit product page complaining that the Jobsite Security Kit is incapable of calling the authorities as advertised.  On December 25, 2021, Defendant Ring's Community Support Team at 1-800-656-1918 confirmed to Plaintiff that *nothing in the Jobsite Security Kit triggers police response,* and instead, the included motion sensor only turns on a light.  In response, Plaintiff asked Defendant Ring's Community Support representative to forward her concerns to the Jobsite Security team and have someone return her call, but she never received a return call.  On December 25, 2021, Defendant Ring's representative on Twitter confirmed to Plaintiff that the Jobsite Security Motion Sensor merely turns on a light, to which Plaintiff asked the agent, "But why is the jobsite security package advertising police response, charging for professional monitoring, and making me get an alarm permit to use it?  If there is nothing in the package that triggers police response… Why would I want the alarm to turn on a light?"  On December 25, 2021 at 11:47 a.m. PST, Defendant Ring's representative on Twitter responded to Ms. White that "the Ring Alarm Base Station Pro's primary function in this kit is providing wifi to the jobsite for consistent connection as opposed to functioning as an alarm kit . . . ."  and that "We greatly appreciate your feedback regarding the clarity of the kit functionality, and we will be sure to forward this to the proper channels for review."  Plaintiff again asked the customer service agent to "please forward my concerns [to the jobsite security team] . . . It is dangerous and misleading to consumers to be marketing a product that doesn't actually provide protection in the way it is advertised."

153.    Therefore, Plaintiff prays for the relief as set forth below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the Court grant Plaintiff and the putative Class Members the following relief against Defendants:

1.    that this action be certified as a Class Action;

2.    that Plaintiff be appointed as the Class Representative;

3.    that Plaintiff's attorneys be appointed as Class Counsel;

4.    that Defendants' wrongful conduct be adjudged and decreed to violate the consumer protection statutes raised herein;

5.    an order requiring imposition of a constructive trust and and/or disgorgement of Defendants' ill-gotten gains and to pay restitution to Plaintiff and all members of the Class and to restore to Plaintiff and members of the Class all funds acquired by means of any act or practice declared by this court to be an unlawful, fraudulent, or unfair business act or practice, in violation of laws, statutes or regulations, or constituting unfair competition;

6.    a temporary, preliminary and/or permanent order for public injunctive relief requiring Defendants to: (i) discontinue engaging in the unlawful conduct alleged herein, including but not limited to inclusion of false and/or misleading statements concerning the capabilities and functionality of the Jobsite Security Kit and Pro Subscription; and (ii) undertake an immediate public information campaign to inform members of the proposed Class as to Defendants' prior unlawful business practices;

7.    distribution of any monies recovered on behalf of members of the Class via fluid recovery or *cy pres* recovery where necessary and as applicable, to prevent Defendants from retaining the benefits of their wrongful conduct;

8.    that Defendants be enjoined from continuing the wrongful conduct alleged herein and be required to comply with all applicable laws;

9.    pre-judgment interests from the date of filing of this suit;

10.    that Plaintiff and each member of the putative Class recover their costs of suit.

///

///

### FIRST CAUSE OF ACTION FOR
### VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT
### CAL. CIV. CODE §§ 1750, *ET SEQ.*

- Actual damages, injunctive relief, restitution, and punitive damages pursuant to California Civil Code sections 1780(a) and 1781; and

- an award of costs and attorney's fees pursuant to California Civil Code section 1780(e).

### SECOND CAUSE OF ACTION FOR
### VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING LAW
### CAL. BUS. & PROF. CODE §§ 17500, *ET SEQ.*

- Restitution and injunctive relief pursuant to Business & Professions Code section 17535; and

- recovery of reasonably attorney's fees pursuant to, *inter alia*, California Code of Civil Procedure section 1021.5.

### THIRD CAUSE OF ACTION FOR
### VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW
### CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*

- Restitution and injunctive relief pursuant to Business & Professions Code section 17203; and

- recovery of reasonable attorneys' fees pursuant to, *inter alia*, California Code of Civil Procedure section 1021.5.

### FOURTH CAUSE OF ACTION FOR
### NEGLIGENT MISREPRESENTATION

- A judgment against Defendants for general and compensatory damages in an amount to be determined at trial.

CLASS ACTION COMPLAINT

**FIFTH CAUSE OF ACTION FOR**
**INTENTIONAL MISREPRESENTATION**

- A judgment against Defendants for general and compensatory damages in an amount to be determined at trial; and
- punitive damages pursuant to Cal. Civ. Code § 3294;

**SEVENTH CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**CAL. COM. CODE §§ 2313, *ET SEQ.***

- All remedies available for breach under California Commercial Code sections 2101, *et seq.*; and
- that Plaintiff and the members of the Class be granted any other relief the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

154.   Plaintiff, individually, and on behalf of all others similarly situated, is entitled to and demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated:  September 23, 2022          **SHEGERIAN & ASSOCIATES, INC.**

By:  /s/ *Cheryl Kenner*
Carney R. Shegerian
Anthony Nguyen
Cheryl A. Kenner

Attorneys for Plaintiff ALISON WHITE, individually, and on behalf of all others similarly situated

CLASS ACTION COMPLAINT